# THE STATE v. F. L. RANDLE.

1. LOTTERY.—Article 404 of the Penal Code, which provides, "if any person shall establish a lottery, or dispose of any estate, real or personal, by lottery, he shall be fined," &c., sufficiently defines an offense under the requirements of art. 3 of the code.
2. WHAT CONSTITUTES A LOTTERY.—Any scheme for the distribution of prizes by chance is a lottery; and it matters not by what name such a scheme may be known, it comes within the prohibition of the penal law against lotteries.
3. INDICTMENT.—Where offenses are several in their nature, and yet of such a character that one of them, when complete, necessarily implies the other, there is no such repugnancy as to make their joinder improper.

APPEAL from Galveston.    Tried below before the Hon. Samuel Dodge.

*George Clark, Attorney General,* for the State.

*Flournoy, Sherwood & Scott,* for appellee.

*Shepard & Searcey,* also for appellee.

DEVINE, ASSOCIATE JUSTICE.—The defendant was indicted, charged with having established a lottery, known as "The Galveston Gift Enterprise Association," and with having disposed of property and money by said lottery.

Defendant moved to quash the indictment.

The first ground of motion to quash the indictment is embraced in the second exception, which is as follows: "No such offense as establishing a lottery is known to the laws of Texas, and no such offense is defined or described in the Criminal Code or the amendments thereto."

3d. "That said indictment is indefinite and uncertain, and charges two distinct offenses."

The court sustained the motion to quash.    The District Attorney appealed, and assigns as error the judgment of the court in quashing the indictment.

Appellee, in support of the objection to the sufficiency of the law under which the indictment was framed, argues that the cases of The State *v.* Foster, 31 Tex., 578;  State *v.* Smith, 32 Tex., 167;  State *v.* Rahl, 33 Tex., 76;  and Fennell *v.* The State, 32 Tex., 378, are conclusive on this subject.

We do not consider these cases analogous to the present one.    In the case of The State *v.* Foster, the defendant was charged with the offense of fornication.    As remarked by Justice Lindsey in the opinion: "The moral offense of fornication is not defined by the code."    There is no reference by name (in the code) to this act, save in art. 392, where the *living together* of a man or woman in adultery or

fornication is defined as an offense; and art. 395, which declares that every white person *who shall live in adultery or fornication* with a negro or person of mixed blood shall be punished. Foster *was not charged* with living or cohabiting with a woman in fornication. He was simply charged with having committed the act. The court said, the living together, &c., constituted the offense, and that not being charged, the accused was not indicted for any offense known to the code, and affirmed the judgment of the District Court. In the case of Smith *v.* The State, Justice Lindsey, referring simply to the case of The State *v.* Foster, says, "that case settles this."

In State *v.* Rahl, Justice Lindsey refers in three lines to the Foster case as the ground for the decision. In Fennell *v.* The State, Justice Lindsey, delivering the opinion of the majority of the court, dismissed the case. That one, when examined, will not be found to have any reasonable application to the case at bar. The cases referred to do not, in our opinion, control this case. We do not consider them as having any application to it. Art. 404 declares: "If any person shall establish a lottery, or dispose of any estate, real or personal, by lottery, he shall be fined not less than one hundred dollars, nor more than one thousand dollars." And we have only to inquire, Is the law sufficient to support the indictment? We think it is.

Counsel for appellee lays stress on the prohibition contained in article third of the Criminal Code, which declares: "In order that the system of penal law in force in this State may be complete within itself, and that no system of foreign laws, written or unwritten, may be appealed to, it is declared that no person shall be punished for any act or omission, as a penal offense, unless the same is expressly defined and the penalty affixed by the written law of the State." This article was intended to prohibit the prevailing practice in this State, before the adoption of the code, of looking to the common law, and outside of the penal

statutes of the Republic and State, for the prosecution of persons for what were designated as offenses at common law, but which were not made penal by our statutes. Article 3 was not intended and cannot be legitimately construed to mean that resort may not be had to other systems for illustration, or in aid of the construing any doubtful or uncertain provision of the Criminal Code. If, however, the intention of art. 3 is that contended for by appellee's counsel, its force no longer exists. The act of February 12, 1858, art. 4 of the Criminal Code, declares that, "The principles of the common law shall be the rule of construction, when not in conflict with the Penal Code or Code of Criminal Procedure, or with some other written statute of the State." The force of the objection, based on art. 3, is destroyed when taken in connection with art. 4; and apart from this, when it is considered that the framers of the code and of art. 3 were the same persons who framed art. 404, under which the defendant was indicted, they certainly cannot be considered as framing a prohibition in one article, and in another declaring an offense which, as contended on behalf of appellee, comes within the meaning of that prohibition. Art. 3 was before them, present in their minds; and the ability displayed by them, and their fidelity in carrying out their allotted task, are the best assurances that the power to comprehend and the desire to perfect their work did not lead them into the absurdity of affixing a punishment to that which they had failed in clear and intelligible terms to declare to be an offense.

The fallacy of the argument, with reference to the supposed failure in art. 404 to define the offense of establishing lotteries and disposing of property by the same, is apparent from a comparison of it with a class of offenses of a kindred character. Art. 409 punishes as an offense the playing at any game with cards at any house for retailing spirituous liquors, &c., &c. Art. 412 declares it

an offense "if any person shall keep or exhibit, for the purpose of gaming, any gaming table or bank,   *    *    * or (who) shall be in any manner interested in keeping or exhibiting such table or bank," &c. Art. 413 declares that it is intended to include, under art. 412, any and all games which, in common language, are said to be kept, dealt, or exhibited. Art. 414 declares that "faro," "monte," "viente un," "rouge et noir," "roulette," "A, B, C," "chuck-luck," "keno," "pool," and "rondo," and every other game within the meaning of the two preceding articles, are prohibited. Art. 428 declares it an offense to bet at any gaming table or bank such as were in the six preceding articles mentioned.

In the five articles of the code referred to there is no specific description of any of the offenses. There is no definition of what is meant by "playing at any game with cards." We have no definition of what is intended by the term "shall keep or exhibit, for the purpose of gaming, any gaming table or bank," or "shall be in any manner interested in keeping or exhibiting such table or bank." We are not informed by art. 413 what is meant by "dealt, kept, or exhibited." Neither is there, in art. 414, or in any other article of the code, any explanatory description or definition of what constitutes or in what consists the offense of keeping, or exhibiting, or betting at any one of the ten games enumerated in art. 414. They are simply denounced as offenses; and it is not assuming too much to say that art. 404, prohibiting and punishing the establishing of a lottery, or the disposing of property by means of the same, is quite as definite and precise as the articles against playing at cards or the keeping or exhibiting a gaming table or bank. The truth is, the words "played," "dealt," or "exhibited," have the meaning attached to them in common language, and this is so declared in art. 417 of the Criminal Code; and the same rule applies to the words "shall establish a lottery, or dispose of any estate, real or

personal, by lottery." This is the general rule, unless the terms have a peculiar signification in connection with some art, science, or calling.

The law denounces certain games and enterprises as unlawful, and tests the liability to punishment of those engaging in or connected with them by the evidence of those familiar with their practices and the commonly received meaning or understanding concerning similar acts; and there is no reason why the same rule should not be applied as in this case to one of the same family of offenses. Neither is there a different rule prevailing.

Bishop on Stat. Cr., p. 951, says: "Lotteries are a species of gaming; that they were in most of the States formerly permitted by law, and even encouraged; but a more enlightened public opinion now prevails, and it is now seen that they are an evil, both by the wholesale and retail, while the other sorts of gaming are merely evils by the retail. The term lottery is said to have no technical signification in the law, but to ascertain its meaning we are to consult the common usage of the language; but this comes from the fact that the word is recent in penal legislation, and in respect of every word there has been some period in the law in which it had no technical legal signification, but for its meaning the courts were to look to common usage; still it is also true of the word lottery, as of any other, that as fast as it is construed by the courts, so fast and so far it requires a technical meaning."

Among the various definitions of the word lottery by "Worcester," "Webster," by "Bishop," and in "Res Cyclopedia" and the "American Cyclopedia," the definition by "Bouvier" seems preferable, when its comprehensive brevity is considered. It was so held in Dunn v. The People, 40 Ill., 467, the court saying: "The term lottery has no technical meaning in the law distinct from its popular signification, and we accept the definition quoted by counsel. * * * * A lottery is a scheme for the distribution

of prizes by chance;" the court in the opinion saying, "He may choose to call his business 'a gift sale,' but it is none the less a lottery, and we cannot permit him to evade the penalties of the law by so transparent a denial as a mere change of name." In Swain *v.* Russell, 10 Ind., 442, the court (in commenting on a statute similar to art. 404) declares that it was the intention of the framers of the Constitution and statutes "to discountenance and suppress gambling in all its forms, one of the most seductive phases of which is presented in the guise of lottery schemes and chance distributions of property."

In The State *v.* Clark, 2 Fogg, N. H., 33, the accused was indicted and convicted of "unlawfully disposing of one ring by lottery," under the following law: "If any person shall make or put up any lottery, or shall dispose of any estate, real or personal, by lottery, he shall be fined," &c.

In many States of the Union there is, as in our State Constitution, a prohibition against lotteries. The statutes of many of the States are in the like general terms as our statute against lotteries; and looking to the character of the act charged, it being simply a game of chance, and taking it in connection with the articles in the code against gaming, we are satisfied the law is not open to the objections presented. It is as descriptive of the offense as are the articles of the code prohibiting other kinds of gaming, and quite as descriptive of the offense as are the laws of nearly all the other States that have prohibited this character of gambling, whether it be covered up under the name of "gift enterprise," "gift sale," "American Art Union," "prize concert," "gifts for the million," or any other of the numerous devices or subterfuges which are used by those who seek to evade the law or entice to their own profit the credulous and unwary. While it is difficult to determine, and at present unnecessary to declare or determine, what acts or enterprises should be classed as coming within the provisions of the articles in the code

prohibiting lotteries, we can say that the law is sufficient in its designation of the offense charged, and that the court erred in sustaining the exceptions to the indictment.

The charge that the indictment is bad for duplicity, in charging two distinct offenses, is not tenable. The indictment charges that defendant "did establish a lottery under the name and denomination of 'The Galveston Gift Enterprise Association,' and did then and there dispose of certain corporeal personal property and money by said lottery." The establishing of the lottery, as charged in the indictment, was merged in the disposing of certain property by reason of the lottery thus established. It is, in truth, taking the indictment together, but a charging of one offense. In Commonwealth *v.* Eaton, 15 Pick., 273, the accused was indicted for selling the one half of a lottery ticket, the indictment charging that defendant "did unlawfully offer for sale, and did unlawfully sell." The indictment was objected to on the ground of duplicity. The court held the indictment good on demurrer, saying: "It is true an offer to sell, without selling a ticket, is an offense by the statute; but an offer to sell, and actually selling, is but one offense."

"Where the offenses are of a distinct nature, neither of them capable of being resolved into the other, it is error to join them in the same count. Where they are several in their nature, and yet of such a character that one of them, when complete, necessarily implies the other, there is no such repugnancy as to make their joinder improper. In fact, under such circumstances, it is less embarrassing to the defendant to be thus charged than to have each stage of the offense split from the context and set in a distinct count." (2 Whart. Preced. of Indict. and Pleas, 834.)

The judgment of the District Court quashing the indictment is reversed, and the cause remanded.

REVERSED AND REMANDED.