## SAM RISEIN v. THE STATE.

### No. 2546.   Decided January 28, 1903.

**1.—Lottery—Indictment.**

An indictment for the establishment of a lottery is defective which alleges the disposition of a single prize to be distributed, not to the winner, but among the purchasers of tickets therein.  A single prize could not be distributed or parceled out among the various purchasers of tickets, but would go to the lucky winner.

**2.—Lottery—Raffle—Distinction Between.**

In a lottery there is a keeper or exhibitor who has the real fund against which the bettors stake their money and win, as evidenced by tickets.  It is a game of chance on the part of the ticket-holders, and, on the part of the keeper, a game of both chance and skill.  A raffle is a game of perfect chance in which every participant is equal.  The successful party takes the whole prize, and all the rest lose.  It has no keeper, dealer or exhibitor.  The element of one against the many is not in it.  Another distinction is, that in a raffle all the tickets are disposed of and some one is bound to win the prize.

**3.—Same.**

Where the method of disposing of a horse and buggy valued at $200 was the issuance of 200 tickets, numbered from 1 to 200, the person drawing the ticket paying the amount represented by its number, and the common fund went to the owner of the horse and buggy, while the ticket-holders were to throw dice, the one throwing the highest dice being entitled to the horse and buggy—the sole prize.  Held, this constituted a raffle and not a lottery, and the indictment for establishing a lottery should have been quashed.

Appeal from the County Court of Limestone.   Tried below before Hon. A. J. Harper, County Judge.

Appeal from a conviction of establishing a lottery; penalty, a fine of $100.

The case is sufficiently stated in the opinion.

*A. B. Rennolds, J. B. Kimbell,* and *Gibson & Bryant,* for appellant.— The indictment charges that the horse and buggy were to be distributed among the persons who should become purchasers of tickets, and the proof is that the said horse and buggy were not to be distributed among such persons, but that the winner was to take the horse, buggy and harness as one whole prize, and all the other participants to lose, which is a fatal variance.

Where the indictment alleges as the gravamen of the offense the establishment of a lottery for the distributing of a horse and buggy among the purchasers of tickets, there is a fatal variance when the proof shows that the horse and buggy were not to be distributed, but were to go, and did go as one prize to one person.

The court erred in refusing to give special charge number 3 as follows: "You are further instructed that if you find from the evidence that there was no distribution of the horse and buggy among the participants, but that said horse and buggy was a prize purchased by (with) a common fund to go to the person who threw the highest number, and that said property was of less value than $500, then you will find the defendant not guilty."

Where the charge is that the defendant "did unlawfully establish a lottery for the purpose of exposing a horse and buggy to be by lot and chance of certain drawings disposed of and distributed to and among

the persons who should become the purchasers of tickets therein," and the evidence is all to the effect that there was to be no distribution of prizes, but that the participant throwing the highest number was to receive and did receive the whole prize, the court should direct an acquittal.

The indictment charges that the defendant "did unlawfully establish a lottery for the purpose of exposing a horse and buggy to be by lot and chance of certain drawings disposed of and distributed to and among the persons who should become the purchasers of tickets therein."

Will Thornton testified as follows: "The plan the raffle was gotten up on was as follows: The cards were numbered from 1 to 200 and put in sealed envelopes and then mixed up. The number represented how much a man was to pay for a chance. If he drew No. 1 he paid 1 cent, if he drew No. 5 he paid 5 cents, and if he drew 165 he paid $1.65 for his chance. There were some gift chances. All persons who drew numbers ending with a cipher paid nothing for their chances. They were given to them free. After the chances had been sold the winner was to be determined by throwing high dice. * * * Nathan Dekle threw the highest number and won the horse, buggy and harness. None of the other participants won anything."

This is the consensus of the testimony on this point. Randle v. State, 41 Texas, 292.

Where the indictment charges the establishing of a lottery for the purpose of exposing a horse and buggy to be disposed of and distributed to and among the persons who should become the purchasers of tickets therein by lot and chance of certain drawings, the State failing to sustain its allegation that the scheme was established for the distribution of the horse and buggy among the purchasers of the tickets, which is the gravamen of the charge, will not then be allowed to secure a conviction for establishing a lottery for the distribution of tickets which represent chances in a raffle, because that is not the offense charged, if offense at all.

Where the indictment alleges that defendant established a lottery for the purpose of exposing a horse and buggy to be by lot and chance of certain drawings disposed of and distributed to and among the purchasers of tickets therein, a motion to quash on the ground that same charges no offense ought to be sustained.

There can be no reasonable contention that the conviction was for establishing a lottery for the distribution of the horse and buggy, because if the court could not read the indictment and tell that such a thing was not feasible, which, however, we think the court could do, the uncontroverted testimony shows that there was to be no distribution of the horse and buggy, but that both were to go and did go as one prize to the winner, the other participants receiving nothing. This was a harmless raffle, the property not exceeding $500 in value.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of establishing a lottery, and fined $100; hence this appeal.

Appellant made a motion to quash the indictment, which was over-ruled, and he assigns this as error. The charging part of the indict-ment is as follows: That Sam Risien "did then and there unlawfully establish a lottery for the purpose of exposing a horse and buggy to be by lot and chance of certain drawings disposed of and distributed to and among the persons who should become the purchasers of tickets therein; a more particular description of which said lottery and the mode of carrying it on is to the grand jury unknown," etc. The form laid down in Willson's Criminal Forms (form No. 233) alleges both the establishment of a lottery and the disposition of property by means of a lottery; and State v. Randle, 41 Texas, 292, is referred to. However, in the note Judge Willson says "that the usual precedents for this offense are more particular and certain in its description than approved in said case." Here the pleader merely proposes to set out the establishment of a lottery, and does not allege a sale by means thereof. Of course, it is competent to properly set out merely the establishment of a lottery, without any allegation of a disposition of property by means of a lottery. The particular criticism made of this indictment is that it alleges the disposition of a single prize to be distributed; not to the winner, but among the persons who should be-come the purchasers of tickets therein. Accurately speaking, a single prize could not be distributed or parceled out among the various pur-chasers of tickets, but would go to the lucky person or the winner. So it occurs to us that the allegations of the indictment should have been drawn to respond to the proof offered in the case.

Appellant also insists that the proof introduced did not show or establish the keeping of a lottery, but, on the contrary, the State proved a raffle for personal property under the value of $500, and consequently no offense was proven against appellant. If we turn to the books, out-side of our own Reports, defining a lottery, it will be difficult, if not impossible, to determine that a raffle is not a lottery. Bishop, Stat. Crimes, sec. 952, and authorities there cited; Webster and Worcester Dictionaries, defining a lottery. Mr. Webster says, "A lottery is a disposition of prizes by lot or chance," and this definition seems to be adopted in our State. State v. Randle, 41 Texas, 292. If these au-thorities are to be followed in defining the offense under our statute, the facts shown in the record here would prove the disposition of the horse and buggy by chance or lot. The difficulty arises because our statute authorizes the raffling of personal property (which is nothing but the disposition of the same by lot or chance) where the value of such property is under $500; and our authorities on the subject have endeavored to distinguish between a lottery, which is inhibited by stat-ute, and a raffle, which is authorized. In Stearnes v. State, 21 Texas, 692, Judge Roberts defines a lottery, which he terms a "grand raffle," as a game in which there is a keeper or exhibitor. This keeper or ex-

hibitor has the real fund, and against this the bettor stakes his money, which may be evidenced by tickets. On the side of those who hold tickets it is a perfect game of chance. On the side of the keeper there are both chance and skill. On the other hand, he defines a raffle, which is authorized by our code, as a game of perfect chance, in which every participant is equal with every other in the proportion of his risk and prospective gain. The prize is a common fund, or that which is purchased by a common fund. Each is an equal actor in developing the chances in proportion to his risk; whether they be developed with dice or some other instrument is not material. The successful party takes the whole prize, and all the rest lose. That element of one against the many, the keeper against the better, either directly or indirectly, is not to be found in it. It has no keeper, dealer, or exhibitor. This case has been followed in Barry v. State, 39 Texas Crim. Rep., 240; Prendergast v. State, 41 Texas Crim. Rep., 358. Referring to the evidence showing the method by which the horse and buggy were disposed of, it would appear that it fits the definition given by our decisions of a raffle; that is, the promoter of the raffle seems to have issued tickets to the value of $200, thus placing the horse and buggy which were to be disposed of at that value. The tickets were numbered from 1 to 200. These were drawn, and the persons drawing them gave for each ticket the amount represented by its number; that is, if a person drew No. 5, he paid 5 cents for his ticket; and, if a person drew No. 185, he paid $1.85 for his ticket. This common fund went to the purchaser of the horse and buggy; and then each holder of the respective tickets, at a time designated, threw dice, the one throwing the highest dice being entitled to the whole prize. Now, if there is any difference between the definition given and the statement of facts here presented, it is that all did not contribute equally in the purchase money of the prize, though all had an equal opportunity or chance to win it. But we can not conceive that this makes any difference. The party was not indicted here for disposing of the tickets, but for disposing of the horse and buggy by means of the raffle. If it had been a lottery, unless all the tickets had been sold, and there had been but the one prize, the keeper or exhibitor of the lottery may not have disposed of all the tickets representing the prize, and so he would have retained both the money and the prize. But here, in the raffle, all the tickets were disposed of, and some one was bound to win the prize. This, it occurs to us, is another distinction between a raffle and a lottery. In view of the facts, as shown by the record in this case, if the decisions of this State are followed, and if there is such a thing as a raffle authorized by law, we are constrained to hold that the mode adopted here of disposing of the horse and buggy was a raffle, and not a lottery.

There are other errors assigned, but we do not deem it necessary to discuss them.

The judgment is reversed, and the prosecution ordered dismissed.

*Reversed and dismissed.*