

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

December 20, 1990

Honorable Terral Smith
Chairman
Natural Resources Committee
House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. JM-1267

Re: Authority of the legislature to permit casino games of chance without a constitutional amendment (RQ-2102)

Dear Representative Smith:

Article III, section 47, of the Texas Constitution provides that the legislature "shall pass laws prohibiting lotteries and gift enterprises," while permitting the holding of certain charitable bingo games and raffles. The legislature has so provided, forbidding in chapter 47 of the Penal Code the holding of lotteries. In addition, the definitions and prohibitions set forth in chapter 47, which proscribes "gambling" as defined in that chapter, are broad enough to effectively prohibit those types of games typically conducted in gambling casinos. See Searcy & Patterson, Practice Commentary, Tex. Penal Code § 47.02 (Vernon 1973).[1]

You ask about the proper construction of section 47 of article III. Specifically you ask the following three questions:

---

1. The Practice Commentary to section 47.02 provides in pertinent part:

   Section 47.02 as enacted appears to proscribe all forms of gambling, from coinmatching and the weekly football pool to lotteries and roulette to parimutuel betting whether on track or with a bookie. As such the section preserves, although with much greater economy, the basic scheme of prior law that in Penal Code arts. 615 to 618, 644, 645, and 646 to 652 outlawed most forms of gambling.

1. May the legislature, without an amendment to Article III, Section 47, of the Texas Constitution, authorize any of the following casino gambling games [in] this state:

(a) roulette;

(b) dice;

(c) slot machines; or

(d) other games awarding a prize solely by chance?

2. May the legislature, without an amendment to Article III, Section 47, of the Texas Constitution, authorize any of the following casino gambling games in this state:

(a) poker;

(b) blackjack;

(c) sports pools; or

(d) other games involving an element of skill?

3. May the legislature, without an amendment to Article III, Section 47, of the Texas Constitution, authorize casino gambling to exist only on Port Arthur's Pleasure Island?

There is no question that chapter 47 of the Penal Code proscribes those gaming activities about which you ask. See Penal Code §§ 47.01, 47.02. The issue is whether those gaming activities fall within the ambit of the phrase "lotteries and gift enterprises" set forth in section 47 of article III and are thereby prohibited by the Texas Constitution. If they do, then the legislature may not authorize those activities by amending the Penal Code; if not, then it may. See Tussey v. State, 494 S.W.2d 866 (Tex. Crim. App. 1973); Barry v. State, 45 S.W. 571 (Tex. Crim. App. 1898).

The Texas Constitutions of 1845, 1861, 1866, and 1869 each contained the following prohibition regarding lotteries:

> No lottery shall be authorized by this
> State; and the buying or selling of lottery
> tickets within this State is prohibited.

Tex. Const. art. XII, § 36 (1869); Tex. Const. art. VII, § 17 (1866); Tex. Const. art. VII, § 17 (1861); Tex. Const. art. VII, § 17 (1845). The constitution of 1876 contained the following prohibition of lotteries set forth in section 47 of article III:

> The Legislature shall pass laws pro-
> hibiting the establishment of lotteries and
> gift enterprises in this State, as well as
> the sale of tickets in lotteries, gift enter-
> prises or other evasions involving the
> lottery principle, established or existing in
> other States.

The addition of the language prohibiting "gift enterprises or other evasions of the lottery principle"[2] apparently was included in order to indicate the drafters' support of two Texas Supreme Court cases that held that the 13th Legislature did not license the operation of "gift enterprises" by the enactment of an occupation tax on them and that a "gift enterprise," as then understood, was essentially a lottery.[3] See Randle v. State, 42 Tex. 580 (1875); State v. Randle, 41 Tex. 292 (1874); 1 G. Braden, The Constitution of the State of Texas: An Annotated and Comparative Analysis 192 (1977).

---

2. It is apparent that the phrase was intended to proscribe other forms of lotteries. See also City of Wink v. Griffith Amusement Co., 100 S.W.2d 695 (Tex. 1936); State v. Randle, 41 Tex. 292 (1874).

3. The licensing statute defined "gift enterprises" in the following fashion:

> Every person, firm, or corporation who shall sell
> anything with a promise, either expressed or implied,
> to give anything in consideration of such sale and
> purchase, shall be regarded as the proprietor of a
> gift enterprise.

Acts 1873, 13th Leg., ch. 121, § 3, at 200.

Section 47 of article III was amended in 1980 to permit the operation of bingo games by charitable organizations and again in 1989 to permit such organizations to hold raffles. Acts 1989, 71st Leg., H.J.R. 32, § 1; Acts 1979, 66th Leg., S.J.R. 18, § 1. Subsection (a) of section 47 of article III of the Texas Constitution now provides the following:

> The Legislature shall pass laws prohibiting lotteries and gift enterprises in this State other than those authorized by Subsections (b) and (d) of this section [which authorize the legislature to permit under certain circumstances the conducting of charitable bingo games and raffles]. (Emphasis added.)

The Texas Supreme Court has declared that section 47 was not intended to condemn merely lotteries, but was intended also to condemn separately stated schemes, which were not lotteries, but which involved the lottery principle, or chance:

> In general, it may be said that chance is the basic element of a lottery. Unless a scheme for the awarding of a prize requires that it be awarded by a chance, it is not a lottery. . . .
>
> There are, however, in a lottery, according to the authorities, three necessary elements, namely, the offering of a prize, the award of the prize by chance, and the giving of a consideration for an opportunity to win the prize. 38 C.J. p. 289, § 2. But the Constitution condemns those things which fall short of containing all the essential elements of a lottery, namely, those things which involve the lottery principle, of which "chance" is the one which constitutes the very basis of a lottery, and without which it would not be a lottery. (Emphasis added.)

City of Wink v. Griffith Amusement Co., 100 S.W.2d 695, 701 (Tex. 1936).

But it is equally clear that the drafters did not intend section 47 of article III to proscribe all forms of gambling. During the drafting of the constitution, an amendment to section 47 was offered to add the words "and

shall pass laws prohibiting  gambling of every character  in all places."   The amendment  was not  adopted.  1875 Texas Constitutional Convention,  Journal  of  the  Constitutional Convention of the State of Texas, Begun and Held at the City of Austin, September 6, 1875, at 269.  Moreover, it is clear that the term  "lottery" was  not thought at  the time  that section 47  was adopted  to include  all forms  of  gambling either.  <u>See</u>  <u>Panas v.  Texas Breeders & Racing Ass'n</u>,  80 S.W.2d 1020 (Tex. Civ. App.  - Galveston 1935, writ  dism'd) (construing section  47 not  to prohibit  wagering on  horse races); <u>State v. Randle</u>, 41 Tex. 292 (1874); V.T.C.S.  art. 179e (creating the  Texas Racing  Commission and  permitting parimutuel wagering on horse races and greyhound races).

Texas courts uniformly  have held  that three  elements comprise a lottery:

> (1)  a prize  in  money  or  other  thing  of value;
>
> (2)   its distribution by chance; and
>
> (3)  payment, either directly or  indirectly, of a valuable consideration for the chance to win the prize.

<u>City of Wink</u>,  <u>supra</u>; <u>Brice v. State</u>, 242  S.W.2d 433,  434 (Tex. Crim. App. 1951); <u>Cole v. State</u>, 112 S.W.2d 725  (Tex. Crim. App. 1937); <u>State v. Socony Mobil Oil Co.</u>, 386  S.W.2d 169 (Tex. Civ. App. - San Antonio 1964, writ ref'd n.r.e.);[4] <u>see also</u>  Attorney  General  Opinions  JM-513  (1986);  H-820 (1976).

With your first two questions,  you ask whether a  list of gaming activities typically conducted in gambling casinos falls within the  ambit of  the phrase  "lotteries and  gift

---

4.  Subdivision (6) of section 47.01 of the Penal  Code defines "lottery" in the following fashion:

'Lottery' means any scheme or procedure whereby one or more prizes are  distributed by  chance among  persons who have paid or  promised consideration for a  chance to win anything of value, whether such scheme or  procedure is called a  pool, lottery, raffle, gift,  gift enterprise, sale, policy game, or some other name.

enterprises." For purposes of this opinion, we assume that two of the necessary three elements of a lottery would be present during the holding of the gaming activities about which you inquire, i.e., the payment of consideration and the awarding of a prize. We understand you to ask whether the necessary third element, the award of the prize by chance, as opposed to an award determined by skill, would also be present.

In Attorney General Opinion C-619 (1966), this office was asked whether a certain referral selling plan called a "representative purchasing commission agreement" constituted a lottery. In discussing the necessary element of chance, the opinion declared:

> The second element, the distribution of the prize by chance, requires a closer analysis in the light of the decisions as to whether the dominating element of the entire scheme was that of chance, or that of skill, judgment, or ingenuity, 54 C.J.S. 846, Lotteries, Sec. 2b(2), and cases cited. If the plan or game depends entirely on skill, it is not a lottery although prizes are offered for the best solution. Boatright v. State, 118 Tex. Crim. 381, 38 S.W.2d 87 (1931). If chance predominates over skill or judgment and permeates the whole plan, a lottery is established. Sherwood & Roberts-Yakima, Inc. v. Clyde G. Leach, 67 W.D.2d 618, 409 P.2d 160 (Wash. Sup. 1965).

Id. at 5-6 (emphasis in original). See Adams v. Antonio, 88 S.W.2d 503, 505 (Tex. Civ. App. - Waco 1935, writ ref'd) (dicta to the effect that gaming statute was violated in instance in which chance predominates over skill); see also Attorney General Opinions WW-222 (1957); V-1483 (1952); V-544 (1948); V-238 (1947).

We conclude that the legislature, without amending section 47 of article III of the Texas Constitution, may amend chapter 47 of the Penal Code to permit the holding of those gaming activities that do not constitute a lottery, i.e., that do not comprise the elements of consideration, a prize, and chance. Whether any of the gaming activities about which you ask involves the dominating element of skill, as opposed to chance, is a question of fact that cannot be resolved in the opinion process. It is the character of the game, and not the skill or want of skill of

the player, that determines whether the game is one of skill or chance. See Adams v. Antonio, supra (authorities cited therein). Therefore, we cannot answer your first two questions.

Your third question is whether the legislature may, without amending section 47 of article III of the Texas Constitution, permit the holding of those gaming activities typically comprising casino gambling only in Port Arthur. You have not provided us with a draft of any proposed amendment to chapter 47 of the Penal Code. We do not provide general guidance or answer speculative questions in the opinion process. Accordingly, we decline to answer your third question. We note, however, that any amendment to chapter 47 of the Penal Code that permitted in Port Arthur alone the holding of otherwise proscribed gaming activities should be considered in light of article III, section 56, of the Texas Constitution.[5] But see V.T.C.S. art. 179e, § 6.14(c) (provides that each greyhound track licensed under the act must be located in a county that has a population of more than 190,000 according to the most recent federal census, and that includes all or part of an island that borders the Gulf of Mexico).

We conclude that the legislature may, without amending section 47 of article III of the Texas Constitution, amend chapter 47 of the Penal Code to authorize gaming activities that do not constitute a lottery or gift enterprise, i.e.,

---

5. Article III, section 56, of the Texas Constitution prohibits the legislature from enacting, except as provided, local and special laws and provides in pertinent part:

The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing:

. . . .

For limitation of civil or criminal actions;

. . . .

And in all other cases where a general law can be made applicable, no local or special law shall be enacted.

that do not comprise the three elements of consideration, prize, and chance. Whether any specific gaming activity involves the dominating element of skill, as opposed to chance, is a question of fact that this office cannot resolve in the opinion process. Therefore, we cannot answer as a matter of law your first two questions. Because we do not answer speculative questions in the opinion process, we cannot answer your third question.

### S U M M A R Y

The legislature, without amending section 47 of article III of the Texas Constitution, may amend chapter 47 of the Penal Code to authorize the holding of those gaming activities that do not comprise the elements of a lottery, i.e., consideration, prize, and chance. Whether any specific gaming activity involves the dominating element of skill, as opposed to chance, is a question of fact that this office cannot resolve in the opinion process.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General