January 17, 2008

Mr. James A. Cox, Jr.                                  Opinion No. GA-0592
Chair, Texas Lottery Commission
Post Office Box 16630                                  Re: Whether the Texas Lottery Commission may
Austin, Texas 78761-6630                               operate a raffle-style game   (RQ-0602-GA)

Dear Mr. Cox:

You ask whether the Texas Lottery Commission may operate a raffle-style game. You describe such a game in the following terms:

> Tickets would be sold at licensed lottery retail locations that have access to a computer system that administers play, and plays would be for a specified drawing date. A raffle-style game would differ from the on-line games currently offered by the commission in that there could be no duplicate tickets and in that there would be a limited number of tickets available. These are the features that make the game more like a traditional raffle.[1]

Article III, section 47(a) of the Texas Constitution requires the Legislature to pass laws *"prohibiting lotteries and gift enterprises* in this State other than those authorized by Subsections (b), (d), and (e) of this section." TEX. CONST. art. III, § 47(a) (emphasis added). Subsection (b), approved by the voters in 1980, permits the Legislature to "authorize and regulate bingo games conducted by a church, synagogue, religious society, volunteer fire department, nonprofit veterans organization, fraternal organization, or nonprofit organization supporting medical research or treatment programs."[2] *Id.* § 47(b). Subsection (d), adopted in 1989, provides in relevant part:

> The Legislature by general law may permit charitable raffles conducted by a qualified religious society, qualified volunteer fire

---

[1]*See* Letter from Mr. James A. Cox, Jr., Chair, Texas Lottery Commission, to Honorable Greg Abbott, Attorney General of Texas, at 2 (July 16, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]Subsection (c) of article III, section 47, requires the Legislature to include certain provisions within the statute authorizing bingo games.

> department, qualified voluntary emergency medical service, or
> qualified nonprofit organizations under the terms and conditions
> imposed by general law.

*Id.* § 47(d). Finally, subsection (e), approved in 1991, permits the Legislature to "authorize the State to operate lotteries and may authorize the State to enter into a contract with one or more legal entities that will operate lotteries on behalf of the State." *Id.* § 47(e). In 1993 the Legislature enacted the State Lottery Act, chapter 466 of the Government Code, to provide for the operation of the state lottery. *See* Act of Apr. 28, 1993, 73d Leg., R.S., ch. 107, § 4.03, 1993 Tex. Gen. Laws 195, 205. The same legislative session also established the Texas Lottery Commission to "exercise strict control and close supervision over all activities authorized and conducted in this state under," *inter alia*, the State Lottery Act. Act of May 11, 1993, 73d Leg., R.S., ch. 284, § 1, 1993 Tex. Gen. Laws 1299, 1299 (now codified as TEX. GOV'T CODE ANN. § 467.101(a) (Vernon 2004)).

In a 2003 opinion, we considered the meaning of the term "lottery" for purposes of article III, section 47(a). *See* Tex. Att'y Gen. Op. No. GA-0103 (2003). In reviewing the historical development of the term, we noted that the Texas Constitution of 1845 and all subsequent constitutions have included a prohibition against lotteries. *See id.* at 3. We then quoted a Texas Supreme Court case that articulated the three elements necessary to constitute a lottery: "[1] the offering of a prize, [2] the award of the prize by chance, and [3] the giving of a consideration for an opportunity to win the prize." *Id.* (quoting *City of Wink v. Griffith Amusement Co.*, 100 S.W.2d 695, 701 (Tex. 1936)). We pointed out that the court declared that of the three, "'chance' is the [element that] constitutes the very basis of a lottery, and without which [a game] would not be a lottery." *Id.* (quoting *City of Wink*, 100 S.W.2d at 701).

Attorney General Opinion GA-0103 then focused upon the significance of the term "lottery" for purposes of subsection (e), article III, section 47, and concluded that its meaning for purposes of subsection (e) is much more limited than under subsection (a). *See id.* at 4. We first described the common understanding of the term "lottery" in 1991, when the amendment was approved by the voters. *Id.* at 5–6. We then considered the actual ballot language presented to the electorate. *Id.* at 6. Finally, we reviewed Attorney General Opinion DM-302, a near-contemporaneous administrative construction of subsection (e) that had found that the voters who adopted subsection (e) did not thereby intend to permit the operation of slot machines. *Id.* at 7. Because video lottery terminals were not within the contemplation of those voters who approved a "state lottery" in 1991, we concluded that, under subsection (e), the Legislature was not authorized to permit the state to operate video lottery terminals as part of the state lottery. *Id.* at 8–9.

An analysis of the question you pose points to a similar conclusion. As you acknowledge in your letter, a raffle-style game differs from the kind of game approved as a "state lottery" in 1991: there would be no duplicate tickets and there would be a limited number of tickets available. *See* Request Letter, *supra* note 1, at 2. This lack of duplicate tickets would mean that if an individual held the winning ticket, he or she need not fear sharing the prize with one or more other persons. The common understanding of the term "state lottery" in 1991 did not embrace the concept of a "raffle-style" game. A "raffle," in lay terms, is "a means of raising money by selling *numbered*

tickets." NEW OXFORD AMERICAN DICTIONARY 1405 (2001) (emphasis added). The concept of "numbered" tickets accords with your explanation that there would be no duplicate tickets. Prizes would therefore never be shared.[3]

But a more obvious clue points to a voter intent not to include "raffle" or "raffle-style" games within the meaning of "state lottery" in subsection (e). Only two years earlier, Texas voters had adopted article III, section 47(d) of the Texas Constitution, the charitable raffle amendment. The electorate must be presumed, therefore, to have been aware of the difference between the two terms. *See Mumme v. Mars*, 40 S.W.2d 31, 35 (Tex. 1931) ("Constitutional provisions, like statutes, are properly to be interpreted in the light of conditions existing at the time of their adoption . . . ."). Nothing in the legislative history, the common understanding of the two terms, or the ballot proposition that offered subsection (e) indicates that either the Legislature that proposed it, or the voters who endorsed it, intended to include a "raffle" or "raffle-style" game within the ambit of the term "state lottery."

Because a raffle is not authorized by any exception to the article III, section 47(a) prohibition against "lotteries and gift enterprises," we conclude that the Texas Lottery Commission may not operate a "raffle-style" game, as you have described it, nor may it enter into a contract with a private entity to operate such a game on behalf of the state.

---

[3]This accords with the distinction drawn between a lottery and a raffle in *Risien v. State*, 71 S.W. 974 (Tex. Crim. App. 1903): "If it [the scheme described] had been a lottery, unless all the tickets had been sold, and there had been but the one prize, the keeper or exhibitor of the lottery may not have disposed of all the tickets representing the prize, and so he would have retained both the money and the prize. But here, in the raffle, all the tickets were disposed of, and some one was bound to win the prize. This, it occurs to us, is another distinction between a raffle and a lottery." *Id.* at 975–76.

## S U M M A R Y

  The Texas Lottery Commission may not operate a "raffle-style" game, nor may it enter into a contract with a private entity to operate such a game on behalf of the state.

Yours very truly,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee