## F. L. RANDLE v. THE STATE.

1. LOTTERY. Every scheme for the distribution of prizes by chance is a lottery.

2. GIFT ENTERPRISE. That every ticket-holder receives something does not render a distribution of prizes of unequal value to the ticket-holders any less a lottery than if the ticket-holders drew blanks when not drawing prizes.

3. CONSTITUTIONAL PROHIBITION OF LOTTERIES. Article XII., Section 36, of the State Constitution : " No lottery shall be authorized by the State ; " and the buying and selling of lottery tickets within the State is pro- " hibited," renders nugatory the third section of Act of June 3, 1873 (Paschal's Digest, 7705), defining what shall be regarded as a gift enter- prise, and imposing a license-tax on the proprietors of such business.

APPEAL from Galveston. Tried below before Hon. Samuel Dodge, Judge of Criminal Court.

The facts are given in the opinion.

*Flournoy, Sherwood & Scott*, for appellant. But a single question is desired to be presented in this brief, to wit: That the court below erred in charging the jury that, if defendant (appellant) did establish a scheme by which prizes were drawn by chance, he is guilty of establishing a lottery, and liable to punishment therefor, although it be shown that each ticket sold in the scheme drew something.

This is clearly the substance of the whole charge, and presents, in short, the facts as appearing in the record, and the law as applied in the court below.

We believe it equally clear that the doctrine enunciated in the charge is erroneous.

The Constitution inhibits lotteries, but provides no *punishment* for their establishment.

Therefore, dealing with the indictment and the facts as a criminal matter, we are not to be guided, in any respect, by reference to the Constitutional inhibition.

The Criminal Code, however (Paschal's Digest, Section 2039), provides for the punishment of any firm who establishes a lottery. Therefore the only power to punish comes from the legislative action.

The Legislature does not, however, define "lottery," and thus held in this case upon a previous hearing that the absence of legislative definition of the offense was not material.

We do not combat this.

The Legislature has, however, defined "gift enterprises" (see Paschal's Digest, 4, Section 7708), as follows: "Every "person, firm, or corporation, who shall sell anything with "a promise, either *expressed* or *implied*, to give anything "in consideration of such sale and promise, shall be regarded "as the proprietor of a 'gift enterprise.'" It will be seen, therefore, beyond cavil, that while they have not defined "lot- "tery," although providing a punishment for any one who shall establish it, they do most clearly define "gift enterprise." It is also perfectly clear that the legislative definition of "gift "enterprise," which they permit, by license for a named amount, has been in the charge of the court below used as a definition of lottery, which is forbidden.

It is impossible to take any other view of the charge, than that the law-making power did not know what it intended to punish, and what it intended to license. And although the Legislature uses words too plain to be misunderstood, the court decides that the Legislature is utterly mistaken in its business of law making, and · having provided a punishment for establishing a lottery, will not be permitted, under any circumstances, to explain, limit, or repeal such provision.

Be it remembered that the constitutional provision has nothing to do with this criminal prosecution.

The Legislature provides punishment for an offense.

The Legislature also plainly declares that certain acts which might be supposed to constitute the offense *do not*, but shall be lawful if any one procures a license to do them.

The court below held that the legislative definition of a

" lottery," or a " gift enterprise," providing a punishment for the one, and permitting the other, is unworthy of consideration because the Constitution inhibits lotteries.

The court interposes its own views, and declares that the law-making power should not be permitted to say what it intends to punish, and when it declares a certain thing defined shall be lawful, that, in point of fact, by judicial construction, the Legislature intended to apply a given punishment to that very thing.

It may be well to recur to the fact, that, whatever views the court may have as to the correctness of the legislative definition of " gift enterprise," or the good policy of licensing them, it is still a matter of such public notoriety, as almost to be judicially proven, that the whole people of this State, of every class, and especially every religious or charitable association, regard and have accepted the legislative definition as correct.

If appellant committed a criminal offense, upon the facts of the record, then are all or nearly all the ministers and members of religious or charitable associations equally guilty of crime.

The Legislature does not draw a line of difference, and the court cannot do so.

If the law, as it stands, is subject to abuse, or, in certain uses of it, works against public interest or morality, it is the business of the Legislature, and not of the court, to make a new law.

We respectfully ask the court to reverse and remand this case, because the charge of the court below is certainly contrary to the law.

*Geo. Clark*, for the State. I. That the Legislature cannot authorize lotteries in the State is clear. (Constitution, Article 171, Section 27; Article 12, Section 36.)

II. That a " gift enterprise," even as defined in the statute (Laws of '73, p. 200), is a lottery is equally clear from the authorities.

(Bell *v.* The State, 5 Sneed. (Tenn.), 507; The State *v.* Clark, 33 N. II., 329; People *v.* The Art Union, 3 Selden, 240; Burnett *v.* The Art Union, 6 Sanford, 614; Woodell *v.* Shotwell 3 Zabriskie, 465; People *v.* Art Union, 13 Barb., 577.)

III. The evidence shows a distribution of money or property by chance, and the charge of the court is correct. The Act of 1873 must therefore, in this respect, be held unconstitutional, and, in affirming the judgment, the court is respectfully asked to lay down the law upon this class of cases, fully and explicitly, as the question presented by the record is a novel one, and has become of public importance, owing to the prevalence of this species of gaming.

DEVINE, J.   The defendant was indicted for having, in the county of Galveston, on the 19th of March, 1874, established " a lottery, under the name and denomination of ' The Galves-" ' ton Gift Enterprise Association,' for the purpose of dispos-" ing of corporeal personal property, and money, by lottery." The trial resulted in a verdict of guilty, and the assessment by the jury of a fine of one hundred dollars.   The sufficiency of the law under which the defendant was indicted, was upheld in the case of The State *v.* Randle, decided at the last Austin term, and the questions now to be considered are those embraced in the assignments of error, that " the charge of the " court was contrary to the law;" that " the verdict of the " jury is contrary to the law and the evidence;" and that " the " court erred in overruling the motion for a new trial."

It is urged on behalf of the appellant that the charge of the court " contravenes the legislative. definition of a gift enter-" prise which is lawful, as against the definition of lottery " which is unlawful."

The charge of the court directed the jury, that " if they be-" lieved defendant did, as charged in the indictment, dispose of " money or property by lottery, in prizes distributed by chance, " according to a specified scheme or plan, then the jury would " be authorized to find a verdict of guilty, and assess the pun-

" ishment by fine not less than one hundred, nor more than
" one thousand dollars." The court further informed the jury,
" that each and every drawing, where money or property is
" offered as prizes to be distributed by chance, according to a
" specified scheme or plan, and a ticket or tickets sold, which
" entitle the holder to money or property, and which is de-
" pendent upon chance, is an offense;" and that "it made no
" difference whether every ticket entitled the holder to a sum
" certain or not, if there is an additional sum dependent upon
" the distribution by chance over the certain sum," and that
" it makes no difference by what name it is called, but it is the
" distribution or offer to distribute the prizes in money by
" chance, to induce persons to buy tickets therein, and the
" sale of tickets, and drawing of the numbers, which constitute
" a lottery, and an offense against the law." The portions
quoted contain all the material parts of the charge to the jury;
in another portion due regard was had to the interests or rights
of the accused, relative to a mitigation of the penalty, in the
event of a verdict of guilty, by reason of defendant having
paid the State, county, and city tax, on " a gift enterprise asso-
" ciation."

We are satisfied that the charge gave the jury the law of the
case, and see nothing in it that defendant can legally object to.
The indictment in this case was found under the law of August
28, 1856, Article 404, of the Criminal Code, Paschal's Digest,
Article 2039, which prohibits the establishing of a lottery, or
the disposing of any real or personal estate by lottery; and de-
fendant, as one of the owners of a gift enterprise association,
relies for his defense on his having paid an occupation tax,
under the provisions of Section 3, of the Act regulating taxa-
tion, approved June 3, 1873. The portion of the act referred
to, reads as follows: " For every gift enterprise, five hundred
" dollars. Every person, firm, or corporation, who shall sell
" anything with a promise, either expressed or implied, to give
" anything in consideration of such sale and purchase, shall be
" regarded as the proprietor of a gift enterprise;" what hidden

meaning may.lurk in this extract from the law, it is not neces-
sary to inquire; if it were, it would be difficult to determine
what is, or is not, embraced within the attempted definition of
a gift enterprise; it is only necessary to declare that if a gift
enterprise association, or any other scheme, carried out, or set
on foot, by any person, firm, or corporation, no matter what its
name or plan for operating may be, if it is a scheme or plan
for "the distribution of prizes by chance," it comes under the
prohibition contained in Article 404 of the Criminal Code,
and cannot have by general or special laws, or by charter or
general act of incorporation, any other standing than any other
illegal act or enterprise set on foot or carried out in defiance of
positive law and a constitutional prohibition could have.

Article 12, Section 36, of the general provisions of the Con-
stitution, contains the same prohibition as that found in Arti-
cle 7, Section 17, of the general provisions of the Constitution
of 1845. The article reads: "No lottery shall be authorized
"by this State, and the buying and selling of lottery tickets
"within this State is prohibited." The constitutional provision
needs no aid to show what is meant, so far as the granting au-
thority by any power in the State to establish a lottery is con-
cerned; and it only remains to inquire, what is understood to
be meant by the words, "establish a lottery."

Bouvier's definition is, "A scheme for the distribution of
prizes by chance," and this has been generally received by
courts as the clearest and most comprehensive of the several
definitions of lottery.

We are led by this to the inquiry, is "The Galveston Gift
"Enterprise Association," "a scheme for the distribution of
"prizes by chance?" If it is such a scheme, it is a lottery, and
those carrying it on are liable to indictment, and, on conviction,
to punishment. In Wooden v. Shotwell, 3 New Jersey, 470.
a tract of land was divided into fifty-eight lots of unequal
value, platted on a map, and numbered, the purchasers paying
the same price for each lot; the number of each lot on a sepa-
rate piece of paper was placed in a box and the names of each

purchaser on separate pieces of paper were placed in a separate box, and the names and numbers of the lots were to be drawn out by "indifferent persons," the name drawn representing the number then drawn; the lots were of unequal value. The court held that it was a lottery, and the deed executed by the owner of the land, and projector of the scheme, null and void. This case is again reported in 4 New Jersey Rep., 794, where the opinion of the court declared "it was a contrivance for "the distribution of prizes by chance; a reliance upon the "result of hazard; a decision of the values of the adventurer's "investments by the favor of fortune." In The Governors of the Almshouse of New. York v. The American Art Union, N. J. Rep., 3 Selden, 228, the court held, although this association was of a meritorious character, incorporated by the Legislature "for the encouragement of the fine arts," that the payment of five dollars by a member for the chance of drawing a painting, the property of the association, by means of names and numbers drawn from a box, as in the cases above cited, was in effect a lottery, and subjected the association to a fine of three hundred dollars, being three times the value of the article drawn for. In the case of People of the State of New York v. The American Art Union, 3 Selden, 241, the same views were again held.

In the State v. Clarke et al. (33 New Hampshire Rep., 330,) the defendants held what they styled a "a gift-book sale;" the witness purchased a book for one dollar from one of the firm. The book had a number written on its back. This number was given to another of the defendants. He opened a book, looked through a hole cut in a piece of zinc, and informed witness that he was entitled to a gold ring worth three dollars, which was given to him. The court held that "The name "given to the process, and the form of the machinery used to "accomplish the object, are not material," provided the substance of the transaction is "a distribution or disposition of property "by lot." And declared that in that case "the scheme in- "volved the same sort of gambling upon chances as in any

"other kind of lottery." In Bell *v*. The State (Tenn. Rep., 5 Sneed, 507), the appellant, Bell, was convicted for keeping "a "gift enterprise," under the statute prohibiting gaming. The court said it was "a rare and novel device for winning and los- "ing, and is ingeniously contrived to evade the law against "gaming and lotteries." In The People *v*. The American Art Union (13 Barbour, N. Y. Rep., 578), in that case any person becoming a member, and paying five dollars, was entitled to an engraving, certain numbers of the Bulletin of its proceedings, and to a chance of one of a number of paintings, which were to be distributed every year by lot among the members, each member having one share for every five dollars paid by him. The court held this was a lottery, and illegal, violating the law and the Constitution, which, like ours, prohibited lotteries. In that case, as in this, it was contended for the defendant that benevolent, moral, and religious men had sanctioned such or similar proceedings. In answer to that argument, the court said, "The good object which men have in view often diverts "their attention from an examination of the means which are "used for that object. Most of this class of men, probably, had "no other thought than to pay their subscription, that some de- "serving painter might receive the benefit of it. Most of them "very probably never examined into the matter, and the long "prevailing custom of dealing in lotteries must have left its influ- "ence on the community, and, in some measure, blinded them "to its evils and the wide-spread sphere it included." In the present case there is not even the feeble pretense that this en- terprise is intended to benefit or aid a meritorious class of per- sons; its articles of association declare its object to be "For "mutual profit of the stockholders of said association." In Whitney *v*. The State (10 Indiana Reports, 404), the court de- clared, "Tickets in numerous of the schemes gotten up to aid "schools and churches, and gift exhibitions, being disguised "lotteries, are illegal articles. The schemes themselves are "but attempts to obtain funds by means detrimental to public "morals and the people's virtue." In the case of Seidenbender

*et al. v.* Charles' administrator (4 Sergeant & Rawle's Reports, 150), the court held, that a distribution of a large number of lots, being the subdivisions of a large tract, the lots being of unequal value, one having a valuable house, another other improvements, where each holder of a ticket was entitled to a lot corresponding with the number on the ticket which contained his name. The entire bench concurring in the declaration that this was a lottery scheme, each of the judges delivering an exhaustive opinion on the subject, Tilghman, Chief Justice, declaring, " that the general prohibition against lotteries in the " Act, covered and embraced the various subterfuges which " offenders might resort to for shelter from punishment," and that " this was the wisest course that could be taken ; for it " being impossible to foresee all the different schemes that in- " genuity might devise, it would have been dangerous to enter " into an enumeration of particulars." Duncan, Justice, observing that " the mischief of lotteries, as stated in the pre- " amble (of the Act) has produced in a great degree the distress " which now affects this country ; they have produced the im- " poverishment of many poor families, and have reduced to " want the families of many of the wealthy ; and the corrup- " tion, not only of the youth, but of the aged, for the rich and " the poor, the young and the advanced in life, have plunged " into the vortex, with a delusion only exceeded by the South " Sea and the Mississippi schemes," and that " it is a miserable " subterfuge to say that this is not a lottery, because there are no " blanks ; for every holder of a certificate obtained a lot. The " law would be a dead letter if this device were to pre- " vail."

Mr. Bishop, in his Treatise on Statutory Crimes, shows, from his reference to numerous decisions of the various courts, that in nearly all the States of the Union, lotteries are prohibited, and those establishing them, or connected with their operations, are punished accordingly ; and that the subterfuges by change of name, or plan of operations, have not availed the persons so concerned, as a defense to a prosecution ; that the courts have

seen through these evasions, and the law has been vindicated and fully enforced against the offenders.

Tested by the principles embraced in the opinions referred to, and the authorities cited, we have no hesitation in declaring that "the operation of the Galveston Gift Enterprise Asso-" ciation " shows clearly that it is, in its operation and essence, "a scheme for the distribution of prizes by chance, or in other "words, is a lottery within the very letter and spirit of the "law, and is a plain infringement on the constitutional inhibi-" tion of lotteries. That the Act to regulate taxation, June "3, 1873, which levies an occupation tax upon gift enter-" prises," has no force or power to legalize this or any of its kindred offenses, whether the ·pretext be to dispose of books, money, jewelry, land, or "lots," or any species of property, be it real or personal; that the giving of something certain, whether it be a postal card, worth one cent, or a watch worth one hundred dollars, cannot relieve it of the illegal character; neither will the object or pretence that it is in aid of a church, a school, an orphans' home, or any other religious, educational, or charitable object, improve its legal status. That it makes not the slightest difference whether it be styled a " Gift Enter-" prise," " Book Sale," " Land Distribution," or " Art Associa-" tion," each and all are lotteries when the element of chance is connected with, or enters into the distribution of its prizes. The idea embraced in the remarks of Justice Lipscomb, in the case of Smith v. The State (17 Texas Reports, 191), which was on a conviction for playing a game called " Pin Pool," on a licensed billiard table, has an application to cases like the present : " Courts will inquire not into the name, but the game, to " determine whether it is a prohibited game."

The remaining question is, was the verdict of the jury contrary to the evidence ? The defendant and two others formed an association in the city of Galveston, on the 27th day of February, 1874, under the name of " The Galveston Gift Enter-" prise Association," under the general incorporation law, of December 2, 1871, and filed their articles of association, in the

office of the Secretary of the State. By the terms of their association it was to continue twenty years, unless sooner dissolved by mutual consent, its object was declared to be " for the purpose " of conducting a gift enterprise, in conformity with the laws " of Texas, for mutual profit of the stockholders of said associa- " tion." The business of the association was to be conducted in the cities of Galveston, Jefferson, San Antonio, Dallas, Brenham, Tyler, Austin, Houston, Waco, Bryan, Marshall, and Denison. Five directors, selected for one year, were to conduct the business; its capital stock was declared to be fifty thousand dollars; the number of shares, five hundred. It was proven by a witness who purchased a ticket from the defendant on the 19th of March, 1874, that the drawing took place on that day, by the placing eighty numbers in a wheel, and that at each revolution of the wheel, " a blindfolded boy " drew out a number, until twelve out of the eighty tickets were drawn. That if a party who had purchased "a two-number ticket," found that the same numbers were among the twelve tickets drawn, he was entitled to a sum of money, varying in amount, according to the price paid for the ticket; that a three-number ticket entitled the holder to a corresponding prize, if among the twelve drawn there was found a ticket with the same three numbers drawn. That prizes varied from one dollar and twenty-five cents, to five thousand dollars; that witness drew nothing, but was entitled to " a postal card," which he failed to claim.

Another witness testified in substance to the same facts.

Another witness stated that the prizes ranged from five to fifty dollars, and that each ticket entitled the holder to "a " postal card," or " car ticket," anyhow.

A witness for defendant stated that he had bought tickets to the amount of fifty dollars, and had drawn prizes; said it was not what he called a lottery, " because you are bound to get " a postal card with each ticket, and in a lottery they are all " blanks or prizes."

Another witness stated: "I know something about lottery. " This is not a lottery, because each ticket-holder is entitled to

" a postal card. In a lottery, if you don't draw a prize you get " nothing."

Another witness, a notary public, attended to see that the drawing was fairly done; he stated the drawings were fairly made, and that " there were two drawings every day."

Licenses from the State, city and county were shown; and it was admitted that defendant was one of the corporators.

The opinion of the two lottery experts, that this was not a lottery, can scarcely be expected to have any weight against the opinions of the most enlightened judges in the country, who have repeatedly held, that the fact of each ticket-holder being certain to receive something did not relieve it from the character of a lottery. The payment of the occupation tax, or license, gave no authority to violate the law, and affords no protection to those who do. The evidence fully sustains the verdict. The court did not err in refusing a new trial, and the judgment is affirmed.

Affirmed.