SID GRANT AND SID TERRY V. THE STATE.

No. 4038. Decided October 14, 1908.

**1.—Carrying on Lottery—Distributing Prizes.**

In a prosecution under article 373 Penal Code, where the evidence showed that defendants had distributed prizes by chance according to a specified scheme or plan of drawing and which was dependent upon chance, the same is a violation of law, no matter what the name of the scheme or plan was.

**2.—Same—Case Stated—Tailoring Club.**

Where upon trial for carrying on a lottery the evidence showed that the members of the club were associated for the purpose of drawing a suit of clothes from a certain tailoring establishment; that the club ran for twenty-six weeks, and one suit was disposed at each drawing at the end of each week; that the club consisted of fifty-two members, who paid one dollar a week; that the suits were valued at $26 and were worth that amount; that the drawing was carried on by means of checks, which were put into a bag, shaken and drawn out: that a member was entitled to a drawing if he remained in the club and paid his dollar for one week or more, etc., the same was a lottery and in violation of the law.

Appeal from the County Court of Tom Green. Tried below before the Hon. Milton Mays.

Appeal from a conviction of carrying on a lottery; penalty, a fine of $100.

The opinion states the case.

No brief for appellant on file.

*F. J. McCord,* Assistant Attorney-General, *J. A. Thomas* and *C. E. Debois,* Special Counsel, for State.—Cited cases in opinion; and Risien v. State, 71 S. W. Rep., 974; State v. Randle, 41 Texas, 292; DeFlorin v. State, 121 Geo., 593; State v. Moran, 48 Minn., 545.

BROOKS, JUDGE.—Appellants were tried together before the court without the intervention of a jury, and the punishment of each defendant assessed at a fine of $100 for carrying on a lottery.

The evidence in the case is as follows: Sid Grant, one of the defendants, after being duly sworn, testified: "I have lived in San Angelo, Texas, about two months. My partner and I, Sid Terry, have been engaged in the business of custom tailors at San Angelo for about two months. I am one of the defendants in this case. The other defendant is my partner, Sid Terry. We have established a suit club in our tailoring business, which club numbers 52. It is necessary for each member of the club to pay one dollar a week for 26 weeks to become a member of the club. The club has a drawing every seven days, on each Saturday night. In the drawings all of the fifty-two members are interested. The club runs for twenty-six weeks and one suit is disposed of at each drawing. All of the members pay one dollar per week. The member drawing a suit of clothes may remain in and pay his dollar or he may withdraw from the club, in which event we seek to get another member in his place, and the retiring member is no longer considered a member of the club. If we could not get a new member, the drawings continue with the remaining numbers. We value the suit of clothes which is drawn at $26, and the suit is worth that amount of money. The right to participate in the drawing costs one dollar, which amount is the week dues of each member. We have had drawings every Saturday night for the past two months, at each of which drawings one of the members drew a suit of clothes. We had a drawing on Saturday, March 7, 1908, at which Jno. Holcomb, one of the members of the club, drew a suit of clothes. He has not yet received the suit of clothes because there was some delay at the factory. We took his measure, and after sample being selected by him, sent the order to Meyer & Co., at Chicago to be made up. The suit of clothes was not present at the time of the drawing. This is the manner in which all suits are made and delivered to the successful party at each drawing. These drawings come off at our place of business. We are also custom tailors and sell suits to any customer who wants them, by selecting sample, taking measure, and sending them off to be made at some tailoring establishment. We have a room which is our place of business, in the City of San Angelo, where we take the orders for suits of clothes. The manner and mode of our drawing is as follows:

"We have checks numbered from 1 to 52, which are put into a bag and are shaken by some interested party; that is, a member of the club, and one check is drawn from this bag by a disinterested party; that is, a person who is not a member of the club. Each check is identified by the number on it, and when the check is drawn, the member having the corresponding number is the successful party. We take the member's application for membership, and at the same time the member pays his dollar and enters the club, we give him a number. We furnish the checks for the drawings and keep possession of the same from one drawing to another.

When the night of the drawing arrives, the members come to our place of business, or at least six or seven of them, when one of the members present either goes and gets the bag containing the checks, or we deliver to him the bag when called upon, and the same is shaken and the drawing takes place as I have stated before.

"If a member has remained in the club and paid his dollar for one week or more, he is entitled to credit for the amount he has paid in. Any member may withdraw at any time he desires, and at the time he withdraws, he is entitled to a credit of the amount he has paid in to be paid to him by us in merchandise. That is, he may buy a suit of clothes, an overcoat, or a pair of pants, for the regular purchase price and receive a credit for the amount that he has paid in. The suit of clothes that was drawn and disposed of to Jno. Holcomb on Saturday, March 7, 1908, was so disposed of in pursuance to the scheme that I have just told the court. It is not optional with us to discontinue a member at any time without his consent, if he makes his payments.

"In starting our club, we solicited the members. We had a piece of foolscap paper with numbers on it from 1 to 52, and when the person would become a member, we would write his name on the paper and give him a number; each person joining the club paying $1. On Saturday night we check up to see whether the members have paid, and when we get that fixed up and get our books fixed, we take out the membership and look over that and see whether the club is filled. We then wait for the members to come in, and wait generally until six or seven come, to see that everything is fair. We put the checks into a bag, but we have nothing to do with the drawing of the number, nor has any one in our employ anything to do with the drawing. The drawing then takes place, as I have before stated. When the number is drawn out, it is shown to us, or one of us. We then refer to the corresponding number and the party holding the same is entitled to a suit of clothes, to be selected from our samples. We then take his measure after the party has selected the kind of cloth and style, and mail to our tailors to be made up. If upon any Saturday night all of the fifty-two numbers are not taken, we then take from the bag as many checks as the club is short, and the numbers are taken out to correspond with the numbers not taken, and the drawing then takes place by us putting all the numbers which are taken by the members into a bag and one of them is drawn by a disinterested party. The party drawing has no means of ascertaining what number he is to draw. We have no way of controlling which number the successful party draws, nor have either of us any interest in which one of the members is successful. We give a suit of clothes at each drawing. If the successful party drawing the suit of clothes is not present, we then notify him that he has drawn a suit so that he may come in and have his measure taken. He has the right to

select from about 400 samples which we have in our place of business. Mr. Holcomb has selected his suit of clothes, and we have taken his measure and sent his order off to be made up. My partner and myself, nor any one connected with us have anything to do with the drawings, do not take any number, nor participate in any manner in same, except as above testified to. There are no blanks in the drawings. No drawings are determined by means of dice or a wheel. When the twenty-six drawings have taken place, there have been twenty-six members drawn a suit of clothes, and when a member has paid in as much as twenty-six dollars, he is entitled to a suit of clothes, if he has not been successful at a drawing. If new members have been taken into the club before the twenty-six drawings are completed and paid in different amounts, they become members of a new club. We keep fifty-two members in a club. The club is a continuous proposition."

Under this evidence we are thoroughly convinced and so hold that the appellants are both guilty of conducting a lottery within the contemplation of the law of this State, and have clearly violated both the letter and the spirit of the lottery statute. In the case of Randle v. State, 42 Texas, 582, the Supreme Court of this State approved the following charge of the trial court: "If the jury believe defendant did, as charged in the indictment, dispose of money or property by lottery, in prizes distributed by chance, according to a specified scheme or plan, then the jury would be authorized to find a verdict of guilty, and assess the punishment by fine not less than one hundred, nor more than one thousand dollars. That each and every drawing, where money or property is offered as prizes to be distributed by chance, according to a specified scheme or plan, and a ticket or tickets sold, which entitle the holder to money or property, and which is dependent upon chance, is an offense. That it made no difference whether every ticket entitled the holder to a certain sum or not, if there is an additional sum dependent upon the distribution by chance over the certain sum, and that it makes no difference by what name it is called, but it is the distribution or offer to distribute the prizes in money by chance, to induce persons to buy tickets therein, and the sale of tickets, and drawing of the numbers, which constitute a lottery, and an offense against the law." This definition clearly covers appellants' offense, and places their acts within the statute which defines a lottery. See article 373 Penal Code; 25 Cyclopaedia of Law, p. 1639, subdivision 8; People v. McPhee, 69 L. R. A., 505; State v. Randle, 41 Texas, 292, and Barry v. State, 45 S. W. Rep., 571.

We accordingly hold that the judgment of the lower court is correct, and it is, therefore, in all things affirmed.

*Affirmed.*