### H. S. COLE V. THE STATE.

No. 17765.   Delivered June 9, 1937.
Rehearing Denied February 2, 1938.

The opinion states the case.

*Emmett Thurmon,* of Denver, Colo., and *Cunningham & Lipscomb,* of Bonham, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for violating the lottery law; punishment, a fine of $100.00.

We summarize the material points in the interest of brevity. Cole, appellant, was proprietor of two picture shows in Bonham. He admitted that in order to increase the patronage of his shows he had a scheme which he called bank night, and he also admitted that its operation had increased such patronage. All the witnesses who testified were connected with said theater, except the recipient of the prize, a Miss Johnson. According to their testimony the first step in the inauguration of bank night was the circulation of a book called a register. Either through solicitation or otherwise several thousand people signed this book. Ordinarily the signator wrote his own name, but a husband could sign for a wife, etc., or a friend for a friend. This book was kept on a stand at the door of one of said theaters so that anyone could sign who wished. Opposite each name on the register was a number. Each Tuesday night at the end of the first show (time not otherwise fixed) slips containing numbers,—said by appellant and his employees to correspond with those on said register,—were put into a con-

tainer, from which one number was drawn out, compared with the book mentioned, and the name opposite that number in the book was announced, and if anyone present identified himself or herself as such named party, the prize referred to was awarded such person. Miss Johnson testified that she had signed the book at some unremembered date, and that she went to the show that night, bought her a ticket, and when the drawing was had her name was announced as the winner, and she identified herself and received the twenty-five dollar prize. It was also in testimony that no person could get a prize unless his name was on the register. A witness testified that when the name opposite the number drawn was announced in the theater, it was also announced outside. Time,—estimated by a witness at four or five minutes,—was given for the lucky person to appear and identify himself, and if no one did this in such time the prize for that night was left in the bank and added to that of the next bank night.

We have not attempted to set out in detail the testimony, but it is in substance what above appears. Thornton, a State witness, but an employee of appellant for many years, said the purpose of bank night was for advertising, and the money was given away by appellant for that purpose.

As further background for our opinion, we note that in the indictment appellant's bank-night scheme was described in detail, and it was alleged that at a moving picture show exhibited by appellant he drew and caused to be drawn from a container a number, and to the person opposite whose name on said book was a number identical with the one so drawn, appellant gave the prize, conditioned that the person whose number was drawn was present at said exhibition; also that appellant charged and caused to be charged the sum of twenty-five cents to be paid as the admission price by persons entering and seeing such picture show, and that appellant did then and there and by means of such lottery dispose of twenty-five dollars in money to Elizabeth Johnson.

That there was a prize, to-wit, twenty-five dollars in money; and that it was awarded by lot, viz: the drawing of numbers from a container; and that Miss Johnson, the winner, had paid her money in order to be present at the picture show, where such drawing was regularly had every Tuesday night,—were and are without dispute.

Any contention such as that no one was charged for writing his name in the book, and that no one could get a prize unless his name was in the book, and that this cut any figure in the

decision as to whether the scheme was a lottery,—seems but idle talk. The purpose of the scheme was admittedly to get patrons into the theater on Tuesday nights, who should pay for their tickets, knowing that they were getting, in addition to seeing the show, a chance in a drawing for a prize of at least twenty-five dollars. If appellant purposed merely a fair means of identification of the holder of the lucky number, he could have easily given to the patrons entering the show on Tuesday nights consecutively numbered cards or tickets corresponding in numbers with those in the container,—but this method of operation would have lacked the desired smoke-screen of a book having on it not only the signatures of those in the theater but possibly of others; and more remotely possible the name of some person who might have left his home, used his gasoline and time, to come down to the show and stand in the weather on the outside,—upon the still greater possibility that a number corresponding to his in the book might be drawn and he be given information of this in time to enter, announce himself as a piker, and identify himself and get the prize.

The reports of the courts of last resort of our sister states are replete with the sad story of the efforts of men to invent schemes to circumvent the lottery laws of various states of our Commonwealth, but none seem to the writer more patently thus characterized than the one now under consideration. The ease with which the multitudes can be led to invest small sums upon glittering prospects of large gains, decided by the turn of a wheel or the drawing of a card, has led fertile brains to produce scheme after scheme. Their name is legion, but the inventors of this scheme seem to pitch their only hope of escape on the proposition that because the name of the winner must be on a book called a register, which had over three thousand names on it, and which was kept at a place where it was accessible to all persons, and because of testimony that when a drawing was had on Tuesday night, in accordance with said scheme, the name of the winner of the prize was announced, both inside and outside of the theater, and a four or five minute period given the winner to present and identify himself,—that somehow this takes out of the scheme some necessary element of a lottery.

As said in State v. Lipkin, 169 N. C., 265:

"We cannot permit the promotor to evade the penalties of the law by so transparent a device as a mere change in style from those which have been judicially condemned, if the gambling element is there, however deep it may be covered

with fair words or deceitful promises * * * The court will inquire, not into the name, but into the game, however skilfully disguised, in order to ascertain if it is prohibited, or if it has the element of chance."

As said by our Supreme Court in Randle v. State, 42 Texas, 584:

"The court informed the jury, 'that each and every drawing, where money or property is offered as prizes to be distributed by chance, according to a specified scheme or plan, and a ticket or tickets sold, which entitle the holder to money or property, and which is dependent upon chance is an offense;' and that 'it made no difference whether every ticket entitled the holder to a sum certain or not, if there is an additional sum dependent upon the distribution by chance over the certain sum,' and that 'it makes no difference by what name it is called, but it is the distribution or offer to distribute the prizes in money by chance, to induce persons to buy tickets therein, and the sale of tickets, and drawing of the numbers, which constitute a lottery, and an offense against the law.' "

This is exactly in point, and is almost a perfect pen picture of the purpose of appellant,—as stated by him,—for operating the scheme. In our case it is merely stated in other words. Appellant's purpose was to increase his business. How? By the distribution of prizes in money by chance to induce persons to buy tickets, and the sale of tickets, and drawing of the numbers, which constitutes a lottery, and is an offense against the law. The language of the opinion in Randle v. State, supra, is quoted with approval in Grant v. State, 54 Texas Crim. Rep., 403.

The fertile brain of him who devised this particular scheme seems to have been able only to offer as a defense the proposition concerning the book called a Register, on which any person could write his name, and appellant and his employees said on this trial that all names on the register were numbered, and slips containing all the numbers on the register were put into the container from which was drawn by chance the slip carrying the number of the winner. Again we repeat what is above quoted: "We are not concerned with the name, but the game." Whose number was drawn out on the occasion in question? Beyond dispute the number opposite the name of one who had bought a ticket entitling her to a sum certain (that is to see the show), and also an additional sum (the prize) dependent on the distribution by chance.

Failure to produce testimony peculiarly within the knowl-

edge of the accused justly raises a presumption against him. Not a word of testimony appears in this record showing that any person not a patron of the picture show and in possession of a ticket thereto, had ever drawn a prize. Not a word can be found supporting the proposition that a number was ever drawn from the container which corresponded with the number opposite the name of some person who was outside the theater but near enough to be available. This ought to completely answer appellant's claim that the use of the book with names in it prevents his scheme from being a lottery. Facts not fancies should control. Actual workings and not theories must be looked to.

If, however, it could be shown on some trial that occasionally some one not a patron of the show had left his home and come to the theater, and was on the outside, and heard his name announced, and was allowed to enter, identify himself and receive the prize for that night,—would this have sufficed to demonstrate that this scheme was not a lottery? We do not think so. As said by the Supreme Court of the State of Washington in State v. Danz, 250 Pac., 37:

"Manifestly it was the plan and purpose of appellants to get additional money by putting on the chance drawing. The testimony shows it was put on as an additional drawing card. The patrons knew it was 'Country Store' night. They paid a valuable consideration to participate. The fact that they paid the same price charged on other nights, when the theater was running a more popular play without an added attraction is not conclusive or controlling in favor of the appellants. A valuable consideration was paid. What did the purchaser get? Not simply a ticket for the screen show, but a ticket to that, and to the chance drawing. The appellants and their patrons so understood and intended it. That was the plan and purpose for which the consideration was paid. Nor is the fact that free tickets were offered to outsiders material in any controlling sense. None such were given out as a matter of fact, and, if there had been, it would not of itself have made any difference. If in the flourishing days of the Louisiana lottery its management had advertised that it would give a free ticket to the president of every bank in the city of New Orleans, that would not have changed the scheme from a lottery, whether or not anyone or all of such free tickets were accepted."

Substantially the same doctrine was announced by our Court of Civil Appeals at Dallas in Featherstone v. I. S. Sta. Assn., 10 S. W. (2d) 124, which case reveals an effort to evade the

lottery law by a scheme "For the purpose of advertising their business * * * and to promote good will among customers, gave tickets * * * to whomsoever they pleased, to customers and *noncustomers* as well; hence this new scheme was lacking in one of the essential elements necessary to constitute a lottery, towit, the consideration." The court said:

"This testimony fails to show any material change in the scheme as originally operated, but reveals a change simply in the plan of its operation. While dealers, under the new plan, distributed tickets to noncustomers as well as to customers, it seems that the scheme was to distribute tickets, in the main to customers, as the evidence discloses that only a few, negligible in number, were given to persons other than customers. That the giving of tickets and the drawings and distribution of prizes, were inducements, to patronage and unquestionably lured customers, is shown from the very satisfactory business results that followed."

In short, we think it does not materially affect the scheme that there be a possibility that some one might get a prize who had not paid for a ticket. It is so plain as to be evident that appellant's purpose was, from no angle and in no sense, to induce people not to buy tickets to the show, but to rely on the fact that their names were on his book. Such proposition would be entirely opposed to his purpose and plan, which was,—as frankly admitted by him,—to increase the patronage of his show. No sane man would believe for a moment that appellant would continue for an extended period, as appears here, to operate a scheme the result of which would or could lose him money.

If the thing relied on here to defeat the claim that this scheme is a lottery, viz: that some of those who might get chances at the drawing, would get them without consideration, —should in fact be found true upon trial by appellant, he would not be here fighting to continue such operation, but would have quickly and of his own suggestion abandoned such scheme.

The indictment herein charged, as above stated, that on Jan. 15, 1935, appellant by means of a scheme called Bank Night established a lottery. We have set out sufficiently the facts, and also the manner in which the charge was laid in the indictment. We quote portions of the court's charge to the jury:

"By lottery is meant a scheme for the distribution of prizes by lot or chance where one, on paying money or giving other thing of value to another, obtains a ticket which entitles him to receive a larger or smaller value, or nothing, as some formula

or chance may determine, but it is absolutely essential in the lottery that there must be a prize, that there must be paid a consideration for the right to participate therein, and the prize must be awarded by lot."

In his application of the law to the facts the court told the jury as follows:

"Now if you should believe from the evidence beyond a reasonable doubt that the defendant, H. S. Cole, did about the 15th day of January, 1935, in Fannin County, Texas, and within two years prior to the return of the indictment, January 19, 1935, establish a lottery, as the term is above defined herein, and that he did by said lottery then and there dispose of said personal property, to-wit: $25.00 in money to Elizabeth Johnson as charged in the indictment, and that as a condition that said Elizabeth Johnson receive the said $25.00, she was required to be present at the picture show of said H. S. Cole, and that the said H. S. Cole as a prerequisite to her receiving the $25.00, charged or caused to be charged 25¢ as admission price to said exhibition of said picture show, you will find the defendant guilty as charged in the first count of the indictment and assess his punishment at a fine of not less than one hundred nor more than one thousand dollars. But unless you do so believe beyond a reasonable doubt, you will acquit the defendant in the first count of the indictment and so state in your verdict.

"If you should believe from the evidence or have a reasonable doubt thereof that Elizabeth Johnson was not required by the defendant, H. S. Cole, to be present at said picture show and to have paid 25¢ to enter said picture show in order to entitle her to participate in the drawing, regardless of what you may find all the other facts in the case to be, you will find the defendant not guilty of the offense of establishing a lottery and of disposing of personal property by lot as charged in the first count of the indictment."

The jury were further told in the charge as follows:

"If you believe from the evidence or have a reasonable doubt thereof that the $25.00 disposed of and awarded to the witness Elizabeth Johnson, was a gift from H. S. Cole, the receiver of which was determined by a drawing, you will find the defendant not guilty in the second count of the indictment and so state in your verdict.

"If you should find from the evidence or have a reasonable doubt thereof that the said witness, Elizabeth Johnson, who was awarded the $25.00 in value did not pay any consideration or any sum of money as a prerequisite to receive said sum of

money and that said sum of money was not a common fund contributed by all who were entitled to participate therein, you will find the defendant not guilty as charged in the second count of the indictment."

Upon the submission of the case under the facts above detailed, and the law as above stated, the jury found appellant guilty.

We see no need for laborious review of the decisions of other jurisdictions. From the adoption of our earliest Constitution in Texas until now its forbiddance has not only been against lotteries but all schemes evidencing attempted evasions of the lottery principle. See Art. 3, Sec. 47, Constitution of Texas.

That the indictment covered everything contended for by appellant is evident. That the charge of the court gave him the full benefit of every defensive theory finding the slightest support in testimony, is also true, as is the further fact that the verdict of the jury was responsive to and supported by the facts in evidence. Appellant charged Miss Johnson twenty-five cents for seeing his show and for getting her chance at the prize; he determined the ownership of the prize by chance; he awarded the money to the winner. The trimmings of the scheme, the coloring of the picture, the hypothetical free chance did not mislead the jury. We can not allow them to mislead the court.

We note that our Supreme Court in cause No. 6899, The City of Wink v. Griffith Amusement Co., 100 S. W. (2d) 695, opinion delivered December 30, 1936, held that Bank Night was a lottery.

The judgment is affirmed.

*Affirmed.*

HAWKINS, JUDGE (concurring).—There is not now, nor ever has been, an attempt in this State to define by statute what constitutes a lottery. The term is defined by the statutes of only a few of the states. Corpus Juris, Vol. 38, page 288, Note 10, lists only four, but says "that such definitions seldom vary in substance from those established by the courts." Having no definition in our statute we must resort to the meaning given the term by popular usage as determined by the various courts. When that is done it is clear that *three* things must concur to establish a thing as a lottery. (a) A prize or prizes. (b) The award or distribution of the prize or prizes by chance. (c) The payment either directly or indirectly by the participants of a consideration for the right or privilege of participating. Texas Jur., Vol. 28, page 409, Sec. 2, deduces from our own cases the

rule stated, and it appears that in every case from our own court where a scheme has been denounced as a lottery that the three elements mentioned are shown by the facts to have been present. See Randle v. State, 42 Texas, 580; Grant v. State, 54 Texas Crim. Rep., 403; Prendergast v. State, 41 Texas Crim. Rep., 358, 57 S. W., 850; Holoman v. State, 2 Texas Crim. App., 610, and other Texas cases cited in Texas Jur. (supra). The same rule demanding the presence of the three elements named will be found stated in 17 Ruling Case Law, page 1222, and 38 Corpus Juris, page 286, with innumerable supporting cases cited under the text in each of said volumes.

The undisputed facts proven by the State show that no one present at the theater on "Bank Nite" was entitled to have their name or number participate in the drawing for the prize unless their names were registered in the "Bank Nite Book," for which registration no charge was made. Those absent from the theater on said night but whose names were likewise registered without charge also participated in the drawing. So it will be seen that no *direct* consideration passed from the participants to appellant. It occurs to the writer that the vice in the scheme—the things which make it a subterfuge—are the following: The party who is in the theater is immediately present to identify himself if perchance the number corresponding to the party's name on the book be drawn. If a number be drawn which corresponds to the name of some one not in the theater it appears to be a remote probability that such a one will be able to appear in the theater and identify himself within the short time allowed, and no possibility for such identification if the holder of the number drawn is not in the immediate vicinity of the theater. Therefore, it appears plain that those who have paid admission to the theater are in a more favorable position to claim the prize than one on the outside although the names of both have been registered in the book without charge. The practical working of the scheme is bound to be known to all patrons of the theater. If the prize would have gone to some one not present but remains unclaimed it is pyramided on the amount of the prize for the next "Bank Nite" drawing. The conditions naturally excite or increase a desire on the part of those eligible by reason of their names being registered to pay the admission price to the theater in order to be more favorably situated to claim the prize on a "Bank Nite" drawing, and in this way an indirect consideration does move from them to the operator of the scheme and furnishes the third indispensable element of a lottery.

The writer is not unmindful that the courts of a number of our sister states have reached the conclusion that the scheme here resorted to was not a lottery. For instance, Iowa v. Hundling, 264 N. W., 608, 103 A. R. L., 861; New Hampshire v. Eames, 183 Atl., 590; People v. Shafer, 289 N. Y. Supp., 649; Tennessee ex rel v. Crescent Amusement Co., 95 S. W. (2d) 310; People v. Cardas, 137 Cal. App., 788, 28 Pac. (2d) 99. In other states the courts have reached the conclusion that the scheme here involved was a lottery; for instance, Commonwealth v. Wall (Mass.), 3 N. E. (2d) 28. We do not cite civil cases where courts of equity are controlled by somewhat more liberal rules than may be resorted to in the construction of criminal statutes. Having the highest regard for the opinion of the courts of our sister states, the writer is impressed with the view that where the present scheme has been held not to be a lottery the cases have turned upon a failure to show a *direct* consideration from the participants, or at least from a part of them, in the drawing for the prize, whereas unless our reasoning be faulty, there deos appear to be an *indirect* consideration moving from the registrants in the book in the purchase of admission to the theater, thereby obtaining a more favorable situation to claim the prize than the outside registrants enjoy.

For the reasons stated, I concur in the opinion of affirmance.

## ON MOTION FOR REHEARING.

GRAVES, JUDGE.—The appellant has filed a comprehensive motion herein, citing many authorities, and evidencing much research. These cited authorities, as pointed out by Judge Hawkins in his concurring opinion herein, in the major portion of instances are in search of a direct consideration moving from the donee to the donor, and failing to so find, same hold that a necessary constituent of a lottery is absent. In such concurring opinion we find an *indirect* consideration in the number of patrons more advantageously located within the theater, and readily accessible in the event of a favorable drawing of such patron's number, especially on account of the fact that only what is termed a "reasonable time" is allowed to elapse for the fortunate person to appear and claim such prize. As pointed out heretofore by Judge Hawkins, such consideration might come from the increased attendance of persons who pay the required sum, some of whom are brought to such theater for the practically sole purpose of participating in such drawing and being personally present in order to claim the prize, should their number be drawn. The donor of such prize is surely offering

the same in order to increase attendance upon his show, and surely expects to have more people there at Bank Nights than would otherwise be present, and in their added attendance, and the money received therefor, he finds the consideration for his munificence.

If it be necessary that the consideration be paid by the participants in the drawing, then such is found in the large number whom it appears usually pack his theater on the "Bank Nights." A consideration may consist of a benefit moving to the donor of the prize regardless from whom the benefit may come. See Corpus Juris, Vol. 13, p. 311. Appellant testified that he thought since establishing a Bank Night that it is possible on Tuesday night it (the attendance) had increased some, and that the advertisement for his theater, he thought, was benefited by Bank Night, and in the light of our knowledge of human nature, we feel sure that unless such benefits had accrued, he would not have continued such Bank Nights.

It is also contended that there is a fatal variance between the allegation and the proof in that the allegation is that the prize provided in such lottery is $25.00 *in money*, and that by means of said lottery appellant did dispose of such $25.00 in money to Elizabeth Johnson, whereas the proof was that said Elizabeth Johnson, on the day succeeding the drawing, went to the bank and received from the bank a check which she cashed and received $25.00 in money on such check.

It occurs to us that the check was merely the vehicle by which the money was passed to the said Elizabeth Johnson. We have heretofore held in the case of Wimer v. State, 48 S. W. (2d) 296, that the check upon which the money was paid was simply an instrument through which the money was received, citing numerous cases in support of such doctrine, and that in such instance there was no variance in the allegation of money, and the proof that a check was received which was paid in money.

This matter has been gone into fully not only in the opinion of the late lamented Judge Lattimore, but also in the concurring opinion herein. We are aware of the fact that some of the decisions of other states are in conflict with the one entertained here; also aware of the fact that many opinions of other states uphold the expressions found in these opinions. After all it is but a scheme, in our judgment, for the purpose of distributing prizes by chance.

The motion for rehearing is overruled.

*Overruled.*