The STATE of Texas, Appellant,

v.

SOCONY MOBIL OIL COMPANY, Inc., et al., Appellees.

No. 14290.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 2, 1964.

Rehearing Denied Dec. 30, 1964.

James E. Barlow, San Antonio, for appellant.

James D. Baskin, Jr., Richard E. Goldsmith, Lester L. Klein, San Antonio, Ross Madole, Donald G. Canuteson, Dallas, for appellees.

MURRAY, Chief Justice.

This suit was instituted by the State of Texas acting through the Criminal District Attorney of Bexar County, seeking an injunction against three corporations: Socony Mobil Oil Company, Inc., Mission Telecasting Corporation and Idea Research and Development Corporation. Mission Telecasting Corporation is the owner and operator of KONO-TV, broadcasting as Channel 12, in San Antonio. The above three corporations will be hereinafter referred to as Mobil, KONO-TV and Idea,

respectively. The trial was to the court without the intervention of a jury, and resulted in a judgment denying the injunction, from which judgment the State has prosecuted this appeal.

The purpose of the injunction was to restrain the operation of a promotion scheme conducted by the above three corporations known as TV-Bingo. The petition alleged that such scheme was a violation of the law, and specifically charged that it constituted one of the following:

"1. A Lottery under the Penal Code.

"2. A Gift Enterprise under the Constitution.

"3. An evasion of the Lottery Law based upon the Lottery principle under the Constitution.

"4. A Bank or Gaming Table under the Penal Code."

All exceptions of the defendants were waived prior to the trial before the court. Thus, the answer of the defendants consisted of two pleas to the jurisdiction based on federal pre-emption of regulation of the television industry, censorship and other constitutional grounds, and the following denials: (1) A re-assertion of the denial of the State's right to regulate broadcasting because of both federal pre-emption and on the theory of censorship; (2) denial that the scheme set out is a violation of the law because the player does not pay a consideration for the privilege to play; (3) a claim that the State waived its right to criminal prosecution because of an opinion issued by the office of the Attorney General.

The trial court overruled the plea to the jurisdiction and denied the injunction, as above stated. Appellees contend that the scheme does not constitute a lottery because no consideration is paid for the bingo cards, but appellant contends that the facts show a sufficient consideration to constitute the scheme a lottery. We take the following statement of the facts from appellant's brief:

"The facts show that about the middle of September, 1963, KONO-TV began broadcasting a widely advertised show called Channel 12 TV Bingo. That the show consists of an announcer who calls off a regular Bingo game on television. The jackpot that a player may win is $25.00 and if there is no winner, is increased every day by $25.00 until there is a winner. This jackpot is paid to the winner in cash. That the jackpot has gotten as high as $225.00. Bingo cards may be obtained by the player at a station owned by the Mobil company and operated by one of its dealer-agents.

"The border of the card is a distinctive color and the card to be played changes each week. That a card to win must be a current card. A sample card is attached as State's Exhibit No. 1. This card is a normal Bingo card with the word Bingo spelled out across the top and 5 rows of numbers from 1 to 75 under each letter and one free space. The game played on television is black-out type Bingo—all numbers must be covered to win.

"The numbers are fed to the announcer by chance by an air blower machine. Each number and one letter are on a ping-pong ball blown around and around by the air and they come out of an air vent opened by the announcer. He has absolutely no control over the number that may come up. A winner must call KONO-TV during the program or within 30 minutes after the program is over to win.

"The sales manager of Mobil, Wade Walles, testified that Mobil has a contract with Idea to put on TV-Bingo. That the scheme was a 'cooperative advertising' program and dealer-agents were allowed to join under a complicated system whereby each dealer-agent paid 'approximately two-tenths of a cent a gallon' of gasoline to get in. Mobil sells the gasoline to the dealer-agents and also pays a share of the cost of the Bingo. That the sales manager of Mobil testified that he did not know where the dealer-agent got the money to pay for his part but it was set up to charge him on the basis of gallonage. The dealer-agent is given 200 cards when he gets in the program. This is 8 books since there are 25 cards to the book. If he wants more, the dealer-agent can buy all of the books from Mobil he wants at a flat rate per book after the original entrance fee. Mobil gets the books from Idea.

"The purpose of the scheme is to increase sales. It does increase sales. The overall scheme was estimated by the agents of Mobil to have increased sales of gasoline ten per cent during the time it has been in operation. The dealer-agent was supposed to own the cards that he bought and they were his to do with as he pleased. Mobil says that the dealer-agent was definitely instructed to give these cards to anyone that asked for them.

"Mobil pays Idea for the operation of this scheme $1,087.00 per week. Approximately 50 Mobil stations in Bexar County participate in this scheme.

"KONO-TV is a television station licensed by the Federal Communications Commission. It receives $190.00 and some odd cents per broadcast from Idea for this show. The show is broadcast daily.

"Idea claims to have a copyright on this scheme and is the promotor of the scheme. Idea pays the jackpot money.

"L. C. Waller, who leases a Mobil Station at 934 Fredericksburg Road, San Antonio, testified that he gives the cards to anyone that comes in. He also stated that he paid $165.00 to get into the program and thirty cents for each 100 cards after the first 200. H. W. Bailey, who leases a Mobil Station at 11014 Goliad Road, San An-

tonio, testified that he puts out 500 to 1000 cards a week and paid $165.00 to get in and $3.00 per 1000 after the first 200. He testified that he gives the cards to anyone over 18 years of age. Frank Burger who operates a Mobil Station owned by Mobil and leased to him on Commerce Street, Houston Highway, San Antonio, testified that he paid around $300.00 to get in and puts out 2,000 to 5,000 cards a week. He says that he was never told who to give the cards to, but normally gives them to anyone that asks. This money is all paid to Mobil."

Art. 654, Vernon's Ann.Penal Code, prohibits the operation of a lottery in the following language:

"If any person shall establish a lottery or dispose of any estate, real or personal, by lottery, he shall be fined not less than one hundred nor more than one thousand dollars; or if any person shall sell, offer for sale or keep for sale any ticket or part ticket in any lottery, he shall be fined not less than ten nor more than fifty dollars."

In 37 Tex.Jur.2d p. 493, § 1, is the following statement:

"The term lottery has no technical signification in the law, and since our statute does not provide a definition, its meaning must be determined from popular usage. According to that test a lottery is a scheme for the distribution of prizes by lot or chance among those who have paid, or agree to pay, a consideration for the right to participate therein, or the distribution itself. Therefore, a game depending entirely on skill is not a lottery although prizes are offered for the best solution."

Thus we see that a lottery is composed of three elements, to-wit: (1) a prize or prizes; (2) the award or distribution of the prize or prizes by chance; (3)

the payment either directly or indirectly by the participants of a consideration for the right or privilege of participating. It is not denied by appellees that there are prizes and that they are disposed of by chance, but appellees do strenuously contend that the participants do not pay any consideration for the right to participate in TV-Bingo. The filling stations pay for the cards, but they give them away to any and all persons who come to their stations and request them. They are not required to buy anything at the filling station, although the cards may be given to customers who do make a purchase at such filling stations. It is not shown what proportion of the bingo cards is given to customers and what proportion is given to non-customers. TV-Bingo is intended to increase the sale of Mobil products in this area and it has had that effect.

The case of Brice v. State, 156 Tex.Cr.R. 372, 242 S.W.2d 433, is in point here. In that case the first two elements of a lottery were shown, but the third element was missing. The scheme thus was very similar to the scheme here. The public was permitted to register for prizes to be given away upon a certain day; no charge was made for the privilege of registering; any one could register, he was not required to be a customer; no admission was charged to be present at the drawing. In fact, there was no requirement that the lucky prize winner be present at the drawing. White's Auto Stores furnished the prizes for advertisement purposes. The Court of Criminal Appeals of this State held that Art. 654, supra, was not violated in that the participants in the prize drawing did not pay, directly or indirectly, any consideration for participating in the drawing, a necessary element of a lottery. Judge Woodley, speaking for the Court of Criminal Appeals, after discussing a number of authorities, said:

"Under the authorities mentioned, we must conclude that in the absence of

any character of favoritism shown to customers, the lottery statute, Art. 654, P.C., is not violated under a plan whereby a merchant awards a prize or prizes by chance to a registrant without requiring any registrant to be a customer or to purchase merchandise or to do other than to register without charge at the store, though the donor may receive a benefit from the drawing in the way of advertising."

Appellant cites the case of Cole v. State, 133 Tex.Cr.R. 548, 112 S.W.2d 725. This was a so-called "bank night" case in which Cole was convicted of operating a lottery. The scheme there was to have people sign a book. This they could do without paying a a consideration, and if their numbers were drawn on any Tuesday night they would receive a prize of $25.00 if they were present in the theater, or if they appeared in the theater within a reasonable time after their numbers were drawn and claimed their prize. They could gather outside the theater on Tuesday night and if their number was called, attempt to get into the theater and claim their prize within a reasonable time, otherwise they would receive no prize. Just how a person on the outside could learn that his number had been drawn and get into the theater in time to claim his prize is not made clear. It was not shown that anyone outside the theater ever claimed a prize in time. Under these circumstances, the Court held that for all practical purposes the public were in effect required to purchase tickets to the theater, and thus pay a consideration for the privilege of participating in the lottery. Here there is no such requirement, a person can receive a card and win a prize in TV-Bingo without paying one cent for the privilege of participating.

The State cites a number of other cases contending that TV-Bingo was a lottery, to-wit: Featherstone v. Independent Serv. Station Ass'n of Texas, Tex.Civ.App., 10 S.W.2d 124; Smith v. State, 136 Tex.Cr. R. 611, 127 S.W.2d 297; Hoffman v. State, Tex.Civ.App., 219 S.W.2d 539; Griffith Amusement Co. v. Morgan, Tex.Civ.App., 98 S.W.2d 844; City of Wink v. Griffith Amusement Co., 129 Tex. 40, 100 S.W.2d 695. These are all earlier cases than Brice v. State, supra, and are distinguishable from the Brice case, in that in those cases the payment of a consideration, either directly or indirectly, for the privilege of participating, was established. TV-Bingo as conducted by appellees herein is not a lottery.

■ Appellant contends that even if TV-Bingo is not a lottery under the provisions of Art. 654, supra, it is nevertheless a violation of Sec. 47, Art. 3, of our State Constitution, Vernon's Ann.St., reading as follows:

"The Legislature shall pass laws prohibiting the establishment of lotteries and gift enterprises in this State, as well as the sale of tickets in lotteries, gift enterprises or other evasions involving the lottery principle, established or existing in other States."

Our Legislature has never passed a law making it a criminal offense to operate "gift enterprises or other evasions involving the lottery principle."

■ The injunction was here sought under the provisions of Art. 4667, Vernon's Ann.Civ.Stats., and in order to secure an injunction under this article a violation of the criminal statutes of this State must be alleged and proved. State ex rel. Shook v. All Texas Racing Ass'n, 128 Tex. 384, 97 S.W.2d 669, 100 S.W.2d 348.

■ Appellees contend that an additional reason for denying an injunction herein is that the State has no power to restrain the broadcast of TV-Bingo, because such power has been pre-empted by Congress, citing Federal Radio Commission v. Nelson Bros. Bond & Mortgage Co., 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166; National

Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344; Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126; Com. of Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L. Ed. 640; American Broadcasting Co. v. United States, D.C., 110 F.Supp. 374, on appeal to Supreme Court of U.S., Federal Communications Comm. v. American Broadcasting Co., 347 U.S. 284, 74 S.Ct. 593, 98 L.Ed. 699; Caples Co. v. United States, 100 U.S.App.D.C. 126, 243 F.2d 232; Farmers' Educational & Coop. Union v. WDAY, Inc., 360 U.S. 525, 79 S.Ct. 1302, 3 L.Ed.2d 1407; Allen B. Dumont Laboratories, Inc. v. Carroll, 3 Cir., 184 F.2d 153; Head v. New Mexico Board of Examiners, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed. 2d 983; 18 U.S.C.A. § 1304. After examining these authorities, we are convinced that Congress has pre-empted the field of regulating the broadcasting of lotteries over TV, and that we do not have jurisdiction to enjoin TV-Bingo, even though it might constitute a lottery under Texas Statutes.

The judgment of the trial court denying the injunction is affirmed.

POPE, J., dissenting.

On Motion for Rehearing.

POPE, Justice (dissenting).

In my opinion, the scheme is a lottery. Someone must pay for everyone who plays. Someone must pay for each bingo card. Each of some fifty service station dealers pays from $167.00 to $300.00 as an original price, and from $10.00 to $15.00 a week thereafter. Unless the dealers pay, they get no cards to distribute for the "free" games. When they quit paying, they cease getting cards. The television station receives $190.00 a day to stage the game. The promoter receives $1,087 each week. The truth is that this scheme was operated upon a plan that obscures but does not destroy the fact that nobody plays until somebody pays. If, in a bingo parlor each person paid for the person who sat next to him, one might argue plausibly that nobody paid for his own game. I would grant the injunction.